Case number 21-6037, Curtis Keller v. Kevin Genovese. Argument not to exceed 15 minutes per side. Mr. Randolph, you may proceed for the appellant. Good morning. Good morning, Your Honors. It may please the Court. Daniel Randolph on behalf of Petitioner Mr. Curtis Keller. The State's procedural default defense fails for two separate and independent reasons. First, Rule 3e simply does not apply to double jeopardy claims, as the rule's plain text makes clear. And second, Rule 3e was not firmly established and regularly applied as of the time of the alleged default. On the double jeopardy merits, Mr. Keller is entitled to relief because aggravated assault is the lesser included offense of attempted especially aggravated robbery, and because the offenses arose from the same criminal episode. And I'd really like to emphasize just how crystal clear that double jeopardy violation is here. We mentioned in our brief that the Tennessee Court of Criminal Appeals, in this very case, found that serious bodily injury, actual serious bodily injury, was required to prove the attempted especially aggravated robbery offense. And that wasn't just a background observation in the background section of the Court's opinion. It was a finding that the Court made that was necessary to a holding on a separate issue. And that forecloses the State's only plausible argument on the double jeopardy issue, which is that we should treat this attempted especially aggravated robbery offense differently because it is an attempted offense. The Tennessee Court of Criminal Appeals opinion forecloses that argument. On the procedural default issue, just to circle back to that, I'd really like to address head-on the State's estoppel argument. We've framed it as an estoppel argument. The State isn't clear as to what doctrinal framework should apply here. We think estoppel makes the most sense, but it's misguided for a whole bunch of reasons. First of all, it misses the whole point because Mr. Keller's direct counsel made a statement about plain error that reflected an extremely confusing and incoherent body of law in the Tennessee courts. If it was confusing, why would he sort of stipulate that plain error applies? It seems like at least his counsel understood what the law was. Well, Your Honor, we would disagree with that. We think this was an unusually incoherent and contradictory line of cases. And what was especially unusual about this was there was no case that recognized— I just want to make sure you're answering his question. He's saying if that's true, why would you say plain error applies? His question is accepting your first point and trying to say, well, then why would the counsel say that? Well, Your Honor, and to get to answering the question, what made this so unusual was there was no opinion that addressed that split in authority. So it's very possible that counsel read half a dozen cases, all of them saying that plain error review applies here and didn't see the other half of the cases that says, no, we actually apply de novo review to double jeopardy claims, even if they're raised for the very first time on appeal. And in fact, that has to be what happened here because there would be no strategic benefit to asserting plain error if you thought that there was a possibility that de novo review applied on direct appeal. We're not considering an effective assistance of counsel on that, I mean. Well, Your Honor, at least— It's a different kind of a case. Sure. For at least two reasons. First of all, there was no constitutionally deficient performance here. To the extent there was error, it was the Tennessee courts themselves that created that error and were the source of the error, so there was no constitutional deficiency there. And then also with respect to prejudice, Your Honor, we've cited a whole bunch of cases in both our opening brief and in our reply brief for the proposition that in Tennessee, the standard of review is a purely legal issue and it can't be waived, it can't be stipulated to, the court has an obligation to determine it. And so on the prejudice prong, it really doesn't matter what counsel says about the standard of review. The courts have an independent obligation to get that right. It's sort of like jurisdiction, it's a threshold determination that the courts need to make and they didn't do that correctly here. Correctly use the word sort of, because it's not like jurisdiction, right? I think it can be waivable or you can have invited error, can't you? Well, Your Honor, in the sense—no, Your Honor, we would disagree with that. Good for you, hold the line. There are some good debates about this in the Chevron setting, you probably know, where people are saying, well, how can the parties be in charge of this? But, boy, I don't know, I feel like I've seen a lot of plein air cases where we accepted that framing and didn't do an independent analysis to kind of—or a due diligence to ensure that that was true. Well, Your Honor, I would point the court to footnote nine in our opening brief and footnote two in our reply brief. We've cited a whole bunch of cases from the Tennessee courts and from the Sixth Circuit holding that the standard of review is not waivable, cannot be stipulated to, and also in Tennessee in particular holding that it is error for a court to get the standard of review wrong even when a party has pointed the court in the wrong direction, even where the parties agree as to what the standard of review is. So in that respect, Your Honor, we do think it's like jurisdiction. It's a threshold issue that the court has an obligation to determine. Now, there may be other differences between standards of review and jurisdiction, but on this critical point and a point that really matters to the analysis here, it is like jurisdiction. The court has a threshold. I didn't find it that strange the way everyone thought the rule worked. I mean, I would have thought the point of the rule was to get all these claims on the table. I get it that double jeopardy is different because if you win, there is no trial. I get the point. But it's a very broadly written rule. So I guess you say this has this—I guess your point is there are spurs of authority going different ways as to when it applies to this claim or that claim. But the threshold point, it is pretty broadly written, and you can understand why the idea would be to get those kinds of complaints on the table at the trial level when they can be fixed right away. Well, Your Honor, we would agree that it's broadly written with respect to trial error. But if you look at the plain text of the rule, it's a motion for a new trial. It specifically refers to other grounds upon which a new trial is sought. So by the text of the rule, it's limited to— But can't you kind of take double jeopardy and flip it the other direction? It's like qualified immunity. The whole offense is to have another jeopardy. Well, Your Honor— So anything is bad. Well, in the multiple punishments context, and actually in the successive prosecutions context as well, the appropriate remedy is not a new trial. The appropriate remedy— I know. I know. I'm trying to make the point. Perhaps I'm missing your question. I'm trying to make the point that you can make the argument that it's even more important that double jeopardy stuff be raised there because it's so offensive that you're even in jeopardy. Sure, Your Honor. I think there are policy arguments on either side as to whether there should be a requirement to raise— Well, I'm saying the policy argument of double jeopardy is very strong that you want this done at the outset. Well, and I think there are also—I would just mention, though, in the multiple punishments context, there wasn't a violation until the conviction was actually imposed. So that happened later in the proceedings. And I'd also just mention that there are reasons why double jeopardy— But wouldn't that be a stronger reason for raising it in the motion for a new trial? Because as you mentioned, that happens at sentencing, and then you file the motion for a new trial sort of 30 days after sentencing. Well, Your Honor, perhaps there may have been another procedural mechanism for raising that claim below, but I think what's critical here is that it wasn't required. We've cited more than a dozen cases in the Tennessee courts that held two things, not only that Rule 3E did not apply to double jeopardy claims, but also that de novo plenary review was appropriate for double jeopardy claims raised for the first instance on appeal. And so what that means is these Tennessee courts, at least a dozen times— this is the Tennessee Court of Criminal Appeals— has determined that it is not required to bring a double jeopardy claim in the first instance for a trial court. What's the case that says—I mean, I'm not saying this is what happened here, but let's just go back to your analogy to jurisdictions. So defense counsel says, no, you know, this—here's what Rule 3 means. We should have raised it. We didn't. We're sorry, but it's so egregious. We still went under plain air. That's how this works. We waive. We forfeit. We invite. We do every conceivable thing for you to think about it that way. And the superior court says, can't be done. Can't be done. This is like jurisdiction, and the standard of review is too central, and we don't care how many times or how emphatic counsel was about the right standard of review. We treat it as, you know, non-forfeitable, non-waivable, just like jurisdiction. Is there that case in Tennessee? Yes, Your Honor. I would point the Court to two cases in our opening brief. They are listed in footnote 9 on page 34, and they're not— I was hoping you'd, like, say one and tell me why it's just like what I just said. And this kind of vague reference to a footnote has me worried that I'm going to be disappointed when I read the cases. I'm often disappointed when I read footnotes, I should point out. Certainly don't mean to be vague, Your Honor. Why would it be in a footnote if it were so central? Well, the answer is there are so many cases, Your Honor. There are so many cases that we put the cases in a string site in the footnote because it would have been cumbersome to read so many cases in the text. But, I mean, I'm afraid you didn't hear my question. I was saying, you were saying it's just like jurisdiction. You went from sort of to it's just like, and I'm trying to push a little on that. That's the case I want, and I doubt that it's got so many cases they belong in a footnote. That's what I'm doubting. But if need be, I'll read the footnote. Well, Your Honor, the two cases that I was going to point to are both from Tennessee. One holds that a court erred, quote, erred when it accepted the party's agreement regarding the standard of review. So it was error to do so. And then another Tennessee court determined that it was, quote, obligated to apply the correct standard despite the party's initial agreement to the incorrect standard. So it may not be on all fours with the hypothetical that Your Honor just stated, but these cases are very clear that the standard of review is a purely legal issue that a court has an obligation to determine. And they litigated the forfeitability, invited error, waivability points in those cases? No, Your Honor, I don't believe so. Well, that's what's going on here. Then I don't have a case that checks all of those boxes, Your Honor. I would also just point out that, oh, I see that my time has expired. Unless the court has further questions at this point, I'll leave my seat for three minutes for rebuttal. You'll get your full rebuttal. Yes, thank you very much. Great, thank you. I appreciate it, Mr. Randolph. And now Mr. Stahl. Good morning, Your Honors. Michael Stahl for the Respondent, and may it please the Court. Your Honors, the two issues before the Court today are whether or not the district court erred in finding that the double jeopardy claim was procedurally faulted, and whether or not habeas relief is owed because the double jeopardy claim has merit. The petitioner's arguments are not compelling. Addressing the first issue on the procedural default, the petitioner fundamentally misses the point of federal habeas review. The lens through which federal habeas review must be viewed is through federal law and Supreme Court law. Two weeks ago, the Supreme Court issued a slip opinion in Cruz v. Arizona where it talks at length about this very issue. It talks about the issue of the adequacy of... How did the state do in that case? I'm sorry, Your Honor? How did the state do in that case? It lost, Your Honor. It lost. But the reasoning that it lost is why the state wins in this case. So the reasoning in that case is the Supreme Court goes through the importance of determining whether or not the adequacy of a state procedural rule forecloses federal habeas review if that rule is enforced below. And it uses specific language to objectively determine whether or not the adequacy of the state procedural rule is an issue. The language that the Supreme Court uses two weeks ago in Cruz v. Arizona is the same language that it uses in 2011 in Walker, and it's the same language that's used in 2002, Lee v. Kedma. And that language is in order to find that, well, first of all, cases where the reviewing court is going to determine that the adequacy of a state procedural rule was not sufficient to find a procedural default are only in extraordinary cases. Extremely rare was the language that was used two weeks ago. So, you know, his key point, which strikes me as a good one, is fine, in the abstract, invited air, plain air, judicial stuff, those things are regularly enforced. That's very supportive of your position. But on the other hand, in this particular case, we do have these lines of Tennessee authority which either seem to say we're going to look fresh at what the standard of review is or that it was quite confusing whether Rule 3 applied to double jeopardy claims. So why doesn't that help show this is one of those extraordinary cases? Well, the language that Your Honor used just now was confusing, and that's not the language that the Supreme Court uses when determining whether or not the state procedural rule was adequate. The language that the Supreme Court uses is unforeseeable, unfair, surprising, and none of those things happened in this case. Isn't it unfair if there are... Well, are there not some cases that say you don't have to bring a double jeopardy claim trial under Rule 3? There are cases that... So why is this unfair? Because in Walker v. Martin from 2011, the question is not whether it's unfair in regards to the application of the rule. In that case, the Supreme Court specifically says state courts have the discretion to apply rules inconsistently. They don't want the words that's used in Martin are draconian. They say we're not going to sit here and make a draconian objective ruling on each application of a state law rule. So even if you have inconsistencies, that's not enough to show that the application of the state procedural rule in a particular case does not foreclose federal habeas review. In this particular case, the petitioner insists that there was some inconsistency, and that allowed him to not raise his double jeopardy claim in his motion for a new trial. But first of all, we know that in 2018, the Tennessee Supreme Court said that was incorrect. We also know, as we cite to in our brief and the petitioner acknowledges in his brief, there are numerous cases that say that you did need to raise a double jeopardy claim in a motion for a new trial. We also know, as this court pointed out in its previous discussion, that the rule is well known among all attorneys. We also know that in this particular case, the attorney admitted to that and said this was not raised below, and therefore I'm only asking the Court of Appeals to apply plain error review. So there's really no argument that this was applied in a surprising manner since petitioner's counsel admitted that he knew that it needed to happen. It's not being applied in an unfair manner because Walker tells us that you could have inconsistencies in state court decisions. The only real issue is whether or not it was unforeseeable or so surprising that it falls within the extremely rare situations that the rule should be. How about the merits of these two offenses? So focus on the elements. I think the incident concept is, I don't think, that pertinent to Blockburger. I think what's more pertinent is just is there a complete overlap of one set of elements versus the other. Well, that's one way to look at it, but there are actually specific details within the incident that would indicate that this is not a violation of Blockburger, Your Honor. So first of all, the elements are especially aggravated assault. Tell us the one that's separated. That's all you have to do. All you've got to do is show there's A, there's B, and there's a feature of the A that never shows up in B. Well, what happens, Your Honor, in this particular case is the petitioner busts in the door. He's a known drug dealer. He busts in the door to the victim who's sleeping next to his girlfriend. When he busts in the door, he jumps on the victim and puts a gun to his head. That's the aggravated assault. His co-defendants go out, do a search through the house and bring in the children into the room. When they bring the children into the room, the petitioner starts to beat the victim in the head, causing serious bodily injury, and tells him he's going to rob him. That's the same victim as the other charge. Yes, but there were two incidents. The period of time lapsed between the two. Is that what you're saying? It's not clear, Your Honor. The entire incident only took five to six minutes because one of the children, when he heard the door get kicked in, called 911 and left the phone on. So the call and the things inside of the house that were happening were recorded between a five- and six-minute period before the police showed up. But the first instance, the aggravated assault occurred when he kicked in the door, jumped on the victim, and put a gun to his head. The attempted especially aggravated robbery happened when he beat the victim and attempted to rob him and told him, I'm robbing you, but he didn't have time to rob him because the police showed up. As to that second incident, could you have charged both? You could have, Your Honor. Under Brockberger, that's what I'm trying to get at. If you break them into two, and the second one has assault plus attempted robbery, could you have charged both independently without having a double jeopardy problem? Yes, Your Honor. Because? Because they were two separate incidents. I'm trying to get to the elements of the statute's point. I mean, I'm glad you emphasized the difference in the incidents. That's a helpful point. I'm not pushing back on that. I'm trying to understand, since you're the expert in Tennessee law, I'm just trying to understand whether they really are overlapping, lesser included. They are, but the especially aggravated assault does not require serious bodily injury, and that's the difference, Your Honor. So the serious bodily injury occurred when he was attacked, and he was bloodied when he eventually met police outside. But putting a gun to someone's head was not serious bodily injury. So it did require two separate elements in order to prove the two separate convictions. I see. I think the difference is the same victim. It is the same victim, Your Honor. Yes. But you're saying it was two different incidents? Yes, Your Honor. That's right. That's right. When the initial came in, was the point to commit a robbery? Yes, the point was to commit the robbery. He said that the victim had stolen drugs from him in the past, and he was trying to get them back and rob the victim and take money and the drugs back and some other things. So this was a professional drug dealer incident that went bad. So, yes, the initial impetus for him entering the house was the robbery, but the aggravated assault occurred when he jumped on him in the bed and put the gun to his head. He hadn't said anything at that point. The victim didn't know what was going on. He hadn't attempted to rob anything. It was after the children were brought there that he said things like, look what you're fixing to make me do, you know me. They started to beat him because he was worried that the ordeal was going bad for him. So all of those things are totally separate occurrences, and that's why the prosecutors decided to charge it the way they did. So the merits of the double jeopardy claim aren't sufficient, and the procedural default argument is insufficient and not compelling if it's looked through the correct lens of federal habeas review. The petitioner's brief doesn't object to that. He doesn't cite to any U.S. Supreme Court cases or federal law that would support his position that inconsistent state court opinions automatically allow for an otherwise procedural defaulted federal habeas claim to be reviewed. The district court found that that was the case, that Rule 3 had been consistently applied. What's your best, do you have a Supreme Court cite for that last point, that inconsistent state law decisions? Yes, that's Walker v. Martin, Your Honor, 131 Supreme Court 1112. All right, where is that? 2011. That's the case where they specifically talk about the discretion that is going to remain with the state courts so that in particular instances, if they decide to bypass the state procedural rule, if they decide to reach the merits of a claim in spite of a state procedural rule, that that's not going to weigh heavily against the idea that on federal habeas review that claim is still procedurally defaulted. Would you say there's a merits decision on the double jeopardy for our purposes in AEDPA? In other words, is there a state court merits decision that there was no double jeopardy problem, independent of procedural default issues? Or would you say, no, we really can't say that and that would have to be reviewed de novo? The Court of Appeals created an alternate argument that there was no plain error review that was owed because there was no merits to the double jeopardy claim. So while it didn't create an alternative argument that was lengthy in discussion, it did a merits review under plain error. More than a sentence? I'm sorry, Your Honor? More than a sentence? I believe so, Your Honor. Okay. I believe so. Not much longer. But what the Court of Appeals found was that they considered the claim under plain error review which necessarily requires a merits analysis. And they did not find that the claim rose to plain merits review. And therefore, it denied the claim after finding that it had been procedurally defaulted. So, yes, a DEPA deference applies to that finding. Okay. I think we understand your argument. Thank you. No more questions? We ask that this Court affirm the findings of the District Court. Okay. Thank you. Mr. Randolph, you have your rebuttal. Thank you, Your Honor. Two points I would like to make on rebuttal. First, the State has for the first time today raised this theory that there were two separate incidents that underlay the two offenses at issue here. That theory is foreclosed by the plain text of the indictment. If you look at Count 8 of the indictment, which charged the aggravated assault offense here, it plainly required proof of unlawfully and knowingly committing an assault on Andrew Morrow and use or display of a deadly weapon, and here is the critical language, causing bodily injury to said Andrew Morrow. So the State's whole theory earlier today was that the aggravated assault was committed when Mr. Keller pointed a gun or held a gun up to the victim's head, but that wouldn't have proven the aggravated assault that was set forth in the indictment here today. There was the same act that underlay both convictions. It was the physical striking of Mr. Morrow with the gun. That same act was what was necessary to cause the bodily injury for both the aggravated assault and the attempted especially aggravated robbery. The second point I'd like to make relates to the court's citation to Walker v. Martin. This is not in the class of cases where discretion comes into play. The Supreme Court has made clear that state courts are entitled to discretion whenever they implement certain procedural rules, but that doesn't apply to all rules. Discretionary rules are treated differently, and sometimes you can see a rule that leads to seeming inconsistencies, but a pattern can be discerned over time. There's a bit more leeway that is given to rules that are discretionary. We are not in that universe here. There is one line of cases that held that Rule 3E applies to double jeopardy claims, and there was another line of cases that held that Rule 3E does not apply to double jeopardy claims, and they each had their own rationale. But neither one of those lines of cases said courts have discretion about whether and when they apply Rule 3E to double jeopardy claims. So Walker v. Martin and Beard v. Kindler, which is another one of these discretion cases, simply are not applicable here. Plain error view has discretion built into it. There's quite a bit of discretion in applying that. I would say the same thing about invited error. Your Honor, I would agree that once a court has decided to apply plain error review, there is discretion built into that standard. But here we're talking about a threshold decision, about whether plain error review should even be on the table for the court. And if Rule 3E does not apply, we've cited half a dozen cases. What's your best U.S. Supreme Court case for kind of opposing Walker? What's the best case from the U.S. Supreme Court saying, this kind of a setting, we got the discretion point, we're not going to punish the states for that, this is how this works. But here's where the line becomes forbidden. Your Honor, I'll give you a U.S. Supreme Court case that's close, and then I'll also provide a Seventh Circuit opinion from Judge Easterbrook that's closer to the circumstances here. We don't have a Supreme Court case that's directly aligned with the circumstances here. But I will point the court to James v. Kentucky, which was a case where the defendant was asserting that his right to an instruction not to draw an adverse inference from his decision not to testify, so that was a federal right, had been obstructed by his counsel's use of a Kentucky term for the relief that was sought. So Kentucky drew a state law distinction between admonitions. So that's Kentucky v. James, right? Kentucky v. Just tell me the name of the Seventh Circuit one. Sure. That's cited in our opening brief, and it's Gozier v. Wellborn. Okay. No, that's great. All right. So it sounds like those were the two points you were going to make? Yes, Your Honor. Thank you very much. Thank you. Thanks to both of you for super helpful arguments. And Mr. Randolph, I see your court appointed counsel. Your client is incredibly lucky. He did a terrific job both in the brief and the argument, and we're very grateful. It makes our job easier to have terrific counsel on both sides of the case, and the state was well represented as well. So thanks to both of you. Thank you, Your Honor. Much appreciated. We appreciate it as well. Okay.